```
                   UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION
```

REGIONS BANK                                                PLAINTIFF

VS.                              CIVIL ACTION NO. 3:09CV601TSL-FKB

FRED A. ROSS, JR.                                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Regions Bank for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Fred A. Ross, Jr. has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

On March 19, 2008, Ross borrowed $471,322.00 from Regions, and signed a promissory note agreeing that he would repay the loan amount, together with any outstanding interest and late charges, by March 19, 2009. Subsequently, the parties entered into a Note Modification Agreement, extending the maturity date to August 18, 2009. After Ross failed to pay the n
ote by the due date, Regions wrote to him demanding payment in full of the principal loan amount, plus accrued interest and late charges, for a total of $474,659.98, by September 19, 2009. When Ross did not pay as demanded, Regions filed the present suit

seeking immediate repayment of all monies owed by Ross under the note and modification agreement, plus attorneys' fees and other expenses incurred in collecting the note.  It has now moved for summary judgment, contending that it is entitled to judgment as a matter of law based on Ross's undisputed default under the note.

In response to the motion, Ross admits that he failed to pay the note and that he is thus in default; but he argues that Regions is estopped from recovery in whole or part because it failed to act in good faith and failed to engage in fair dealing with him in a separate case from which the note in this matter stems.  Ross's position is set forth in an affidavit accompanying his response.  Therein, Ross asserts that prior to execution of the note and note modification that is the subject of Regions' complaint herein, Jay and Candice Powell had contracted to purchase the Rosses' personal residence, on which Regions held a second mortgage.  When the Powells refused to follow through with their agreement, claiming that title to the Ross residence was not merchantable, Ross and his wife sued the Powells in Chancery Court in Madison County, Mississippi.  Ross claims that while the Powell suit was pending, Alon Bee, the Jackson Metropolitan President of Regions, advised Ross's then attorney James Herring that he believed title to the Ross home was merchantable and that he disagreed with the affidavit from the Powells' expert, who claimed that title was not merchantable.  Ross states that Bee was

subpoenaed to appear at the Powell trial (presumably to give his opinion that title was merchantable), but as the trial date approached, Bee advised that he could not honor the subpoena to appear in court without getting approval from Regions' counsel in Birmingham. Ross relates that around the same time, Regions' attorney Ben Watson called his attorney, Herring, and asked that Herring release Bee from the subpoena, telling Herring that if Bee was not released, then his testimony might be altered to the Rosses' detriment. Ross asserts that although Herring did not release Bee from the subpoena (contrary to a letter contemporaneously sent to Herring from Regions' counsel indicating that Bee had been so released), Bee did not appear to testify in the Powell trial, and that as a result, because Ross had no witness to contradict the Powells' expert, he knew he could not win the case and was thus forced to settle the case for approximately $280,000 less than what was due under the terms of the contract with the Powells. Ross thus takes the position that he is entitled to a setoff, or alternatively a counterclaim, against the amount Regions asserts he owes it by the $280,000 loss he incurred as a result of Regions' conduct in the Powell suit.

The court need not consider whether these facts might provide a viable defense to all or part of Regions' claims in this cause, since Ross's assertions in his affidavit are not based on personal knowledge and/or constitute hearsay and hence are inadmissible.

3

The sole basis of which Ross opposes Regions' summary judgment motion is his claim that Regions' President Alon Bee *told attorney James Herring* that he believed title to the Rosses' property was merchantable, and his claim that *Regions' attorney thereafter told Herring* that if he would not release Bee from a subpoena to testify at the Powell trial, then Bee would alter his testimony to the Rosses' detriment.[1] Setting aside for the moment the question whether the statements attributed to Regions' agents (Bee and

---

[1] The court notes that Bee and Watson have provided affidavits attesting to a far different version of events. In his affidavit, Bee states that he and Ross were long-time friends, and that when Ross told him he had filed suit over the sale of some property in Madison County and might need Bee to testify about the buyers' ability to obtain financing, Bee told Ross he would be willing to help him if possible. Bee states he never told Ross that title to the property was merchantable, and that in fact, he had no factual basis for making such a statement. According to Bee, when Ross subsequently presented him with, and asked him to sign an affidavit for use at the trial, Bee could not truthfully sign it, as he had no familiarity with the opinions set forth therein.

Bee states that he spoke with Regions attorney Ben Watson and asked Watson to express his concerns to Herring, and he also personally told Ross he could not testify on Ross's behalf, to which Ross agreed. Watson has submitted his own affidavit, confirming that at Bee's request, he communicated with Herring, and told him that Bee could not sign the affidavit because he could not truthfully testify to the opinions asserted therein.

Bee states that when he was thereafter served with a subpoena, he asked Watson to tell Ross that he, Bee, had a conflict, and that his testimony would not be helpful in any event because he could not truthfully express the opinions Ross wanted. According to Watson, he related these matters to Herring, who then agreed to release Bee from the subpoena. Watson specifically denies having told Herring that Bee's testimony would be "altered" if Herring and Ross would not agree to release him from the subpoena.

4

Watson) are hearsay or rather fall within an exception to the hearsay rule,[2] it is clear that Ross's testimony regarding Herring's report of statements allegedly made to him by Bee and Watson is clearly inadmissible hearsay, which may not properly be considered on a summary judgment motion. See Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995) (noting that hearsay evidence and other evidence excludable at trial is not competent summary judgment evidence); Kelly ex rel. all Heirs at Law of Kelly v. Labouisse, 2009 WL 427103, at 3 (S.D. Miss. Feb. 19, 2009) (stating, "It is well settled that a party may not rely on inadmissible hearsay in opposing a motion for summary judgment.").[3] As Regions notes, Ross's testimony about what Herring says Bee said is garden variety hearsay – the classic statement of another to prove the truth of the matter asserted. See Fed. R. Evid. 801(c) ("hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Again, the court agrees. And, since plaintiff has presented no

---

[2] Regions acknowledges such statements could possibly survive a hearsay challenge and be considered "admissions of a party-opponent" had they been offered by attorney Herring, see Fed. R. Evid. 801(d)(2), but contends that such statements, coming from Ross, are hearsay, and do not come within any exception to the hearsay rule.

[3] There is nothing in Ross's affidavit to suggest that he was present and personally heard Bee's alleged communication with Herring, nor is there anything to suggest that Ross was personally privy to Watson's communications with Herring.

5

admissible evidence in support of his charge of unclean hands or bad faith on the part of Regions or support for his claim for setoff or estoppel, and further, as he has offered no other basis for relief from his liability for the obligations set out in the note and note modification agreement, it follows that Regions is entitled to judgment as a matter of law on its claim for breach of contract.

In support of its motion, Regions has offered unchallenged evidence that as of the date of Regions' complaint, Ross owes $471,322.00 in outstanding principal, $9,956.67 in accrued interest, and $1,125.39 in late charges pursuant to the terms of the note. Additionally, under the terms of the note, Regions is entitled to recover all its attorneys' fees and other expenses incurred in collecting the note.

Accordingly, it is ordered that Regions' motion for summary judgment is granted. It is further ordered that Regions shall have fifteen days from the entry hereof in which to submit evidence of its attorneys' fees and collection costs.

SO ORDERED this 6th day of July, 2010.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE